UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


KALED HAMDAN (#374052)

VERSUS                                             CIVIL ACTION

BURL CAIN, ET AL                                   NUMBER 14-406-SDD-SCR

**<u>NOTICE</u>**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, April 13, 2015.

                                    STEPHEN C. RIEDLINGER
                                    UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KALED HAMDAN (#374052)

VERSUS                                              CIVIL ACTION

BURL CAIN, ET AL                                    NUMBER 14-406-SDD-SCR

## **MAGISTRATE JUDGE'S REPORT**

Before the court is the Motion to Dismiss filed by defendants Warden Burl Cain, Msgt. Cecil Hilburn, Charles Boudreaux and Michelle Diaz. Record document number 39. The motion is opposed.[1]

Pro se plaintiff, an inmate currently confined at Tensas Detention Center, Waterproof, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Louisiana State Penitentiary (hereafter "LSP") Warden Burl Cain, Maj. Robert Bradley, Msgt. Cecil Hilburn, Msgt. Johnson, Msgt. Charles Boudreaux, Mrs. Carol Gilcrease, EMT Michelle Diaz, Lt. Col. Barrett Booker, EMT Cunningham, Msgt. Cunningham, Msgt. Becky Meredith, Capt. Smith, Classification Officer Mr. Francis Abbott (Classification Officer), Asst. Warden Tim Delaney, Sgt. Bryon Brumfield and LSP Medical Director Dr. Toce.[2] Plaintiff alleged that the defendants retaliated against him, verbally abused him, physically attacked him, issued him false

---

[1] Record document number 57.

[2] Record document numbers 1, 15, 16, 36, 58 and 72.

disciplinary reports, subjected him to unconstitutional conditions of confinement, denied him mental health and medical treatment, destroyed his personal property, denied him copies of work assignment request forms, and intimidated and terrorized him, all in violation of is constitutional rights.

## I. Factual Allegations

Plaintiff alleged that on April 19, 2013, he went to the R.E. Barrow Treatment Center to have an x-ray taken. Plaintiff alleged that he was required to remove his clothing and after an extended period of time he was told that the x-ray would not be taken because the x-ray machine had no power. Plaintiff alleged that a week later he submitted a medical request form to EMT Diaz requesting an x-ray of his back. Plaintiff alleged that EMT Diaz referred him to the Treatment Center and an x-ray was taken 30 minutes later.

Plaintiff alleged that on May 14, 2013, Msgt. Boudreaux verbally threatened him. Plaintiff alleged that Warden Cain's Legal Programs personnel did not respond to his correspondence or administrative grievances.[3]

Plaintiff alleged that on May 19, 2013, Medical Director Dr. Toce retaliated against him for filing an administrative grievance complaining that he was improperly charged for medical services

---

[3] Record document number 1-1, p. 1, Claim 1, ¶ 6.

without his authorization.  Specifically, the plaintiff alleged that he was denied adequate medical treatment, a low sodium diet, and was not referred to a bone and nerve specialist for treatment.

Plaintiff alleged that in September and October 2013, Maj. Bradley physically attacked him three times after the plaintiff complained that he was being discriminated against, was denied a job change and was denied access to the law library.  Plaintiff alleged that on each occasion Maj. Bradley, without provocation, punched him in the throat.  Plaintiff alleged that in January 2014 Maj. Bradley sexually harassed him and touched him in a sexual manner.

Plaintiff alleged that in November, Maj. Bradley instructed him to pick up trash on the Big Yard and promised to reassign hm to a more desirable job the following week if he picked up all of the trash.  Plaintiff alleged that when he bent over to pick up trash Maj. Bradley told him, "Boy you would look good bending over, only if you had a G-string on."  Plaintiff alleged that the comments placed him in imminent danger from other inmates.

Plaintiff alleged that in 2013 and 2014, Msgt. Hilburn sexually harassed him and verbally abused and threatened him. Plaintiff alleged that in February 2014 Msgt. Hilburn made him sit on a footlocker for hours without allowing him to use the restroom.

Plaintiff alleged that on August 6, 2013, Msgt. C. Boudreaux verbally harassed him.  Plaintiff alleged that on July 8, 2013,

Msgt. Boudreaux issued him a false disciplinary report and made a crude comment which caused other inmates to laugh and mock him. Plaintiff alleged that on January 15, 2014, Msgt. Boudreaux grabbed papers from his hands and examined them.

Plaintiff alleged that on November 8, 2013, Msgt. Meredith harassed him. Plaintiff alleged that on November 26, 2013, he complained to Msgt. Meredith that he should not be assigned to the agricultural fields or to shell pecans. Plaintiff alleged that on December 2, 2013, he was issued a false disciplinary report in retaliation for complaining that Msgt. Meredith had denied him access to his medication, interfered with a legal matter and harassed him. Plaintiff alleged that the disciplinary report was subsequently dismissed.

Plaintiff alleged that on November 10, 2013, he was informed that he had attempted to commit suicide. Plaintiff alleged that EMT Cunningham transported him to the medical center with the bottoms of his slippers tied to his ears. Plaintiff alleged that at a hearing on November 13, 2013, he stated that his life was not in danger and he was released from the cellblock.

Plaintiff alleged that in December 2013 he was required to work in the agricultural fields in below freezing temperatures in a foot of mud. Plaintiff alleged that he was not provided a pair of work boots and Msgt. Cunningham made him perform his work barefooted for two hours and then walk a quarter mile barefooted

through freezing mud, hard gravel and frozen grass. Plaintiff alleged that an emergency medical technician examined him and told him that there was nothing wrong with him.

Plaintiff alleged that he made numerous requests for mental health treatment but he was not placed on call out to receive treatment. Plaintiff alleged that when he spoke to Carol Gilcrease about his situation, she suggested that he think about work release.

Plaintiff alleged that on December 12, 2013, he complained to EMT Diaz that he was not receiving medical and mental health treatment and she just looked at him. Plaintiff alleged that he was examined the next day.

Plaintiff alleged that on January 9, 2014, he was issued a false disciplinary report and on January 13, 2014 he was found guilty of the disciplinary charges by the disciplinary board. Plaintiff alleged that he was sentenced to a loss of 30 days of good time credits and a 12 week phone restriction.

Plaintiff alleged that on January 9, 2014, Capt. Smith yelled at him and threatened to issue him a disciplinary report if he refused to report to work. Plaintiff alleged that Capt. Smith ordered Lt. Cannon to issue the plaintiff a false disciplinary report but Lt. Cannon told the plaintiff to go talk to Capt. Smith. Plaintiff alleged that Capt. Smith verbally abused him and conspired with Sgt. Boudreaux to cover up their racial abuse.

Plaintiff alleged that in January 2014, Lt. Col. Booker flooded his footlocker which destroyed his personal property.

Plaintiff alleged that on January 14, 2014, Msgt. Johnson would not allow him to work on the headline. Plaintiff alleged that Msgt. Johnson made offensive comments suggesting that the plaintiff is a terrorist. Plaintiff alleged that on January 15, Msgt. Johnson gave him worn and dirty work gloves. Plaintiff alleged that on January 21, 2014, Msgt. Johnson selected him from a group of 200 inmates to retrieve a milk crate. Plaintiff alleged that he refused to comply with the order. Plaintiff alleged that he was not issued a disciplinary report and the next day he was provided a new pair of gloves.

Plaintiff alleged that Classification Officer Francis Abbott refused to give him copies of job change work assignment request forms he had completed. Plaintiff alleged that Abbott told him to speak with the Head of Security but would not identify him. Plaintiff alleged that Abbott conspired and was totally indifferent because he did not report the alleged misconduct of other unidentified corrections officers.

Plaintiff alleged that Asst. Warden Tim Delaney failed to intervene on his behalf after he was verbally abused by Msgt. Charles Boudreaux and Maj. Robert Bradley. Plaintiff alleged that Sgt. Brumfield witnessed Sgt. Hilburn verbally abuse him but failed to intervene on his behalf or report the alleged misconduct.

6

## II. Applicable Law and Analysis

**A. Frivolous Standard**

Subsection (c)(1) of 42 U.S.C. § 1997e provides as follows:

> (c) Dismissal.--(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

An in forma pauperis suit is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733 (1992); *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 1831-32 (1989); *Hicks v. Garner*, 69 F.3d 22, 24 (5th Cir. 1995). A court may dismiss a claim as factually frivolous only if the facts are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional. *Denton,* 504 U.S. at 33-34, 112 S.Ct. at 1733. Pleaded facts which are merely improbable or strange, however, are not frivolous for § 1915(d) purposes. *Id.; Ancar v. SARA Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). Dismissal under § 1915(d) may be made at any time before or after service of process and before or after an answer is filed. *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

**B. Motion to Dismiss Standard**

Defendants Warden Burl Cain, Msgt. Cecil Hilburn, Charles Boudreaux and Michelle Diaz moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(1) and (6), Fed.R.Civ.P.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is to be liberally construed ... and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94, 127 S.Ct. at 2200 (citations omitted). But even a pro se complainant must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950. The court need not accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." *Id.* at 1949-50 (internal quotation marks omitted).

### C. Official Capacity

Defendants argued that they are entitled to Eleventh Amendment immunity insofar as the plaintiff sued them in their official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al*, 502 U.S. 21, 112 S.Ct. 358 (1991). A suit against a state official in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's `policy or custom' must have played a part in the violation of federal law."

*Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law. A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a section 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." Officers sued in their personal capacity come to court as individuals. A state official in his or her official capacity, when sued for injunctive relief, would be a person under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14.

Thus, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacities for actions taken by them under color of state law which caused the deprivation of constitutional rights. Additionally, because the plaintiff sought prospective injunctive relief his claim against the defendants in their official capacity is also actionable under § 1983. Specifically, the plaintiff sought the

expungement of disciplinary reports.[4]  Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief, whether in the form of damages or prospective injunctive relief.

### D. Supervisory Liability

Plaintiff named Warden Cain as a defendant but failed to allege any facts against him which rise to the level of a constitutional violation. Specifically, the plaintiff alleged that Warden Cain's Legal Programs personnel did not respond to his correspondence or administrative grievances.

To be liable under § 1983 a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983).

Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), *cert. denied*, 480 U.S. 917, 107 S.Ct. 1369 (1987) (quoting

---

[4] Record document number 72, p. 7.

*Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2037 (1978)). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn v. Manuel*, 773 F.2d 605, 609, 610 (5th Cir. 1985) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427 (1985)).

Plaintiff did not allege any facts regarding a constitutionally deficient policy.

### E. Verbal Abuse

Plaintiff alleged that Msgt. Hilburn and Msgt. Boudreaux verbally abused him. Specifically, the plaintiff alleged that in 2013 and 2014 Msgt. Hilburn called him a faggot, sand n*gger, and Pakistani mother f*cker. Plaintiff alleged that on May 14 and August 6, 2013, Msgt. C. Boudreaux verbally harassed him. Plaintiff alleged that on July 8, 2013, Msgt. Boudreaux made a crude comment which caused other inmates to laugh and mock him.

Allegations of verbal abuse alone do not present claims under § 1983. "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." *McFadden v. Lucas*, 713 F.2d 143 (5th Cir.), *cert. denied*, 464 U.S. 998, 104 S.Ct. 499 (1983); *Burnette v. Phelps*, 621 F.Supp. 1157 (M.D. La. 1985); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973).

**F. Unconstitutional Conditions of Confinement**

Plaintiff alleged that in February 2014, Msgt. Hilburn made him pack his things and sit on a footlocker for hours without allowing him to use the restroom.

The Eighth Amendment prohibits only the wanton and unnecessary infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976). Whether the treatment received by an inmate is characterized as inhumane conditions of confinement, a failure to attend to medical needs, or a combination of both, it is appropriate to apply the "deliberate indifference" standard articulated in *Estelle*. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 2327 (1991).[5]

Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Id.*

Plaintiff's allegation that he was not allowed to use the restroom for several hours does not rise to the deprivation of a

---

[5] In *Seiter*, the Supreme Court stated that, in emergency situations, where prison officials must act "in haste, [and] under pressure", the requisite intent rises to "acting `maliciously and sadistically for the purpose of causing harm.'" *Seiter*, 501 U.S. at 302, 111 S.Ct. at 2326.

single identifiable human need. Plaintiff did not allege that he actually had to use the bathroom, or that he suffered any harm as a result of not being permitted to use a bathroom facility for a few hours.

**G. False Disciplinary Report**

Plaintiff alleged that on July 8, 2013, Msgt. Boudreaux issued him a false disciplinary report.

Under § 1983, allegations that the plaintiff was reported or punished for an act he did not commit do not amount to a denial of due process where the state provides a procedurally adequate hearing. *Collins v. King*, 743 F.2d 248 (5th Cir. 1984). The disciplinary procedures in effect at the state penitentiary were previously approved by this court in *Ralph v. Dees*, CA 71-94 (M.D.La.), and *Williams v. Edwards*, CA 71-98 (M.D. La.), *affirmed*, 547 F.2d 1206 (5th Cir. 1977). These procedures meet the standards set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963 (1974), and *Stewart v. Thigpen*, 730 F.2d 1002 (5th Cir. 1984).

**H. Search**

Plaintiff alleged that on January 15, 2014, Msgt. Boudreaux grabbed papers from his hands and examined them.

The Fourteenth Amendment to the Constitution of the United States provides in pertinent part that no state shall deprive any person of life, liberty or property without due process of law.

While imprisoned persons enjoy many protections of the Constitution, it is clear that imprisonment carries with it the circumscription or loss of many significant rights. *See, Bell v. Wolfish*, 441 U.S. 520,545, 99 S.Ct. 1861, 1877 (1979). Loss of freedom of choice and privacy are inherent incidents of confinement. *Bell v. Wolfish*, 441 U.S. at 537, 99 S.Ct. at 1873. The Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions. *Hudson v. Palmer*, 468 U.S. 517, 525, 104 S.Ct. 3194, 3200.

**I. Deliberate Indifference**

Plaintiff alleged that on April 19, 2013, he went to the R.E. Barrow Treatment Center to have an x-ray taken but the x-ray machine was broken and the x-rays were not taken. Plaintiff alleged that a week later he submitted a medical request form to EMT Diaz requesting an x-ray of his back. Plaintiff alleged that EMT Diaz referred him to the Treatment Center and an x-ray was taken 30 minutes later.

Plaintiff alleged that on December 12, 2013, he complained to EMT Diaz that he was not receiving medical and mental health treatment and she just looked at him. Plaintiff alleged that he was examined the next day.

15

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment he felt he should have is not the issue. *Estelle v. Gamble*, supra; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Unsuccessful medical treatment does not give rise to a Section 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation. *Varnado, supra*.

Plaintiff's allegations of deliberate indifference to his serious medical needs do not rise to the level of a constitutional violation. Plaintiff acknowledged that after submitting his

16

requests for medical treatment to EMT Diaz, he was provided the requested medical treatment.

**J. Conspiracy**

Plaintiff alleged that Msgt. Boudreaux conspired with Capt. Smith to cover up his verbal abuse.

To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act. *Arseneaux v. Roberts*, 726 F.2d 1022 (5th Cir. 1982). The conspiracy allegations made by the plaintiff are conclusory, and more than a blanket of accusation is necessary to support a § 1983 claim. *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820 (1984); *Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir. 1987); *Arseneaux v. Roberts, supra*. Furthermore, as explained in section E above, the petitioner's allegations of verbal abuse do not allege claims under § 1983.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the defendants' Motion to Dismiss be granted and the claims against Warden Burl Cain, Cecil Hilburn, Charles Boudreaux and Michelle Diaz be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii), and without leave to further amend the complaint because there is no conceivable, non-frivolous federal claim he could assert against these defendants consistent with the facts alleged in his original

17

and amended complaints.  It is further recommended that the case be referred back to the magistrate judge for further proceedings.

Baton Rouge, Louisiana, April 13, 2015.

*signature: Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE